UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LUONG NGO,<br><br>                  Plaintiff,<br><br>                  v.<br><br>CITY OF WESTMINSTER, et al.,<br><br>                  Defendants. | Case No. 8:25-00705 ADS<br><br>MEMORANDUM OPINION AND ORDER |

**I.** **<u>INTRODUCTION</u>**

      Before the Court is Defendants City of Westminster, Charlie Chi Nguyen and Darin Lenyi's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion"). (Dkt. No. 34.) Plaintiff filed an opposition to the Motion (the "Opposition"). (Dkt. No. 37.) Defendants filed a reply in support of the Motion (the "Reply"). (Dkt. No. 38.) The Court found the matter appropriate for decision without oral argument and vacated the hearing on the Motion. (Dkt. No. 41.)

The Second Amended Complaint (the "SAC") states eight claims related to events that allegedly occurred on September 25, 2024, at the Westminster City Hall. At the time, Plaintiff was a candidate for Westminster City Council, Defendant Nguyen was the mayor of Westminster (the "Mayor"), and Defendant Lenyi was the Police Chief (the "Police Chief"). Having considered the Second Amended Complaint (the "SAC"), the parties' briefing, the record and the relevant legal authority, the Cout grants the Motion without further leave to amend.[1]

## II. BACKGROUND

### A. Procedural History

Plaintiff filed a Complaint on April 7, 2025. (Dkt. No. 1.) Plaintiff filed a First Amended Complaint (the "FAC") on April 17, 2025. (Dkt. No. 8.) Defendants filed a Motion to Dismiss the FAC on May 13, 2025. (Dkt. No. 16.) At a hearing, the Court granted the Motion to Dismiss the FAC with leave to amend. (Dkt. No. 29.) On July 9, 2025, Plaintiff filed the SAC. (Dkt. No. 33.) On July 23, 2025, Defendants filed the Motion and a Request for Judicial Notice. (Dkt. Nos. 34, 35.)

### B. Summary of Factual Allegations

The following SAC allegations are substantively identical to the allegations asserted in the FAC. A bagua mirror was displayed on a wall outside the Mayor's Office front entrance, a location that was part of city hall. (SAC ¶ 16.) The bagua mirror is an ancient Chinese religious symbol related to the beliefs of Taoism and Feng Shui. (Id.)

---

[1] Each party was deemed to have knowingly and voluntarily consented to proceed before a Magistrate Judge for all purposes pursuant to the Central District of California Local Rules. (Dkt. No. 22.)

Plaintiff is a devout Catholic who was offended by the display of the bagua mirror (the "Bagua Mirror"). (Id.)

On September 25, 2024, Plaintiff held a press conference at the Westminster City Hall, with the intent to bring attention to the Bagua Mirror. (Id. ¶ 21.) During the press conference, Plaintiff removed the Bagua Mirror from the wall. (Id. ¶ 23.) Westminster police officers arrested Plaintiff. (Id. ¶ 24.) Following the press conference, the Mayor publicly criticized Plaintiff and claimed Plaintiff was not fit to be a member of the Westminster City Council due to Plaintiff's status as a criminal defendant. (Id. ¶ 28.)

### C. Request for Judicial Notice

Defendants filed a Request for Judicial Notice (the "RJN"). (Dkt. No. 35.) The RJN asks the Court to take judicial notice of the results from a search completed on July 18, 2025 on the Orange County Superior Court government website https://namesearch.occourts.org/ for "Joseph Ngo", "J Ngo", and "Luong Ngo" for the dates between September 24, 2024 and July 18, 2025. (Id. at 2.) The search results reflect no record of a criminal complaint against Plaintiff. (Id. at 2, 4.) Plaintiff does not oppose the RJN, nor object to the authenticity of the proffered document.

On a motion to dismiss, Courts may take judicial notice of facts not subject to reasonable dispute without converting the motion to one for summary judgment. Mack v. South Bay Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986). Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice may be taken of public records and "government documents available from reliable sources on the Internet,

such as websites run by governmental agencies." <u>Gerritsen v. Warner Bros. Entertainment Inc.</u>, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015). The Court grants the RJN and takes judicial notice of the fact that there are no records of a criminal complaint filed against Plaintiff in Orange County in connection with the events underlying the SAC.

### D.     **Summary of Motion**

The Motion, made pursuant to Federal Rule of Civil Procedure 12(b)(6), argues that the entire SAC fails to state a claim upon which relief can be granted. Defendants argue Plaintiff's claim that the Bagua Mirror violates the First Amendment's Establishment Clause fails because the allegations do not amount to coercion or the establishment of a religion by the government. In addition, the Motion argues the Mayor and Chief of Police are entitled to qualified immunity. (Mot., Dkt. No. 34 at 16.) For the claims that require the absence of probable cause, Defendants argue that the SAC allegations show there was probable cause for Plaintiff's arrest. The Motion also contends that the City of Westminster (the "City) is not liable because the SAC contains no allegations of a custom, policy or practice that caused Plaintiff's alleged harm. (Mot. at 23–24.)

Plaintiff's opposition (the "Opposition") argues that the SAC claims are valid and sufficiently pled. Plaintiff argues the Bagua Mirror is a religious symbol and it's display shows public support of the religion it represents, violating the Establishment Clause. Regarding the claims that hinge on probable cause, Plaintiff argues that the arrest was solely made for the purpose to silence Plaintiff and so it was false and illegal. In arguing the City's liability, Plaintiff contends that the Mayor and Police Chief are final policymakers.

## III.  LEGAL STANDARD

Dismissal of a claim is proper under Rule 12(b)(6) when a plaintiff "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." Caltex Plastics, Inc. v. Lockheed Martin Corp., 824 F.3d 1156, 1159 (9th Cir. 2016).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Claims under Section 1983 require sufficiently alleging a constitutional or federal statutory violation.  See Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles, 648 F.3d 986, 992–93 (9th Cir. 2011) (explaining "plaintiff must plead that a municipality's policy or custom caused a violation of the plaintiff's constitutional rights" to bring official capacity claim); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006) (Section 1983 requires a "deprivation of a right secured by the federal Constitution or statutory law . . . by a person acting under color of state law").

On a Rule 12(b)(6) motion, the Court must assume all factual allegations are true and draw all reasonable inferences in the plaintiff's favor.  Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005).  However, the Court is not bound to accept as true "a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  In addition, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."

1  Twombly, 550 U.S. at 555. Even "a liberal interpretation of a civil rights complaint may
2  not supply essential elements of the claim that were not initially pled." Ivey, 673 F.2d at
3  268.

4  **IV.     DISCUSSION**

5      **A.    First Amendment Establishment of Religion (Claim 1)**

6      Plaintiff's first claim asserts a violation of the First Amendment's Establishment
7  Clause by the City of Westminster (the "City") and the Mayor. Defendants argue this
8  claim should be dismissed because the SAC fails to allege facts that meet the new test for
9  an Establishment Clause violation articulated in Kennedy v. Bremerton School District.
10 (Mot. at 14 (citing 597 U.S. 507 (2022)).) According to Defendants, Plaintiff has not
11 alleged any facts that the hanging of a Bagua Mirror on City property is contrary to
12 historical practices and understandings or that is has a coercive effect on those who view
13 it. (Mot. at 15.) Defendants contend that the SAC contains no facts showing that
14 hanging the Bagua Mirror resembles religious establishment such as making a religious
15 observance compulsory, coercing church attendance or forcing a person to engage in
16 formal religious exercise. (Id.) The Motion maintains that there are no facts in the SAC
17 pleading that the display of the Bagua Mirror coerced Plaintiff into any religious activity
18 or to refrain from any religious activity. (Id. at 16.)

19     In addition, Defendants argue that the City and Mayor are entitled to qualified
20 immunity, because the right Plaintiff asserts is not clearly established. (Mot. at 16.) The
21 Motion contends that the display of a Bagua Mirror on City property is not prohibited by
22 clearly established law. (Id.) According to Defendants, there are no cases in any circuit
23 regarding the display of a Bagua Mirror, or any other feng shui element, and no cases
24 decided by the Supreme Court or Ninth Circuit applying the new Kennedy

Establishment Clause test to the display of alleged religious symbols on Government property.  For those reasons, Defendants explain that they could not have been on notice of a constitutional violation and the claim should be dismissed based on their qualified immunity.  (Id. at 17.)

In opposition, Plaintiff argues that the display of the Bagua Mirror violates the Establishment Clause because it shows public government support of the religion it represents. (Opp. at 19–20.)  Plaintiff contends that the Bagua Mirror is an overt religious symbol, and an affront to other religions.  (Opp. at 18.)  The Opposition argues that the facts here are analogous to cases where public school officials were found to have violated the Establishment Clause for coercing students into religious practice. (Opp. at 18–19.)  According to Plaintiff, legal precedent before Kennedy is still relevant to the analysis of an Establishment Clause violation and shows that the display of the Bagua Mirror is illegal.  (Id. at 17, 19.)  The Opposition contends that the City and Mayor are not entitled to qualified immunity because providing a police presence at a press conference is an abuse of their authority.  (Id. at 11-12.)

The Supreme Court has ruled that government conduct which the framers of the First Amendment would have understood to establish a religion violates the Establishment Clause.  Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 535-536 (2022). Coercion, such as making a religious observance compulsory, forcing anyone to attend church, or forcing anyone to engage in formal religious exercise, are "hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." Id. at 537.  By contrast, government conduct which in the history and understanding of the Establishment Clause was not considered impermissible coercion, does not violate the Establishment Clause.  See id.  The "Establishment Clause must be

interpreted by reference to historical practices and understandings." <u>Kennedy v. Bremerton Sch. Dist.</u>, 597 U.S. 507, 535-536 (2022) (internal quotations omitted). The Establishment Clause does not "compel the government to purge from the public sphere anything an objective observer could reasonably infer endorses or partakes of the religious." <u>Kennedy</u>, 597 U.S. at 535 (internal quotations omitted).

The SAC alleges that the Bagua Mirror was a religious symbol displayed outside the Mayor's office on a city hall wall. (Compl. ¶ 16.) The SAC alleges that "Plaintiff is a devout catholic who was offended by display" of the Bagua Mirror. (<u>Id.</u> ¶ 17.) Neither party has briefed in any detail how the Bagua Mirror display fits in the historical understandings and practices of this nation regarding the Establishment Clause. However, the Supreme Court has noted there "is an unbroken history of official acknowledgment by all three branches of government of the role of religion in American life from at least 1789." <u>Lynch v. Donnelly</u>, 465 U.S. 668, 674 (1984).

In <u>Lynch v. Donnelly</u>, the Supreme Court held that a city owned and displayed Christmas nativity scene including the Infant Jesus, Mary and Joseph did not violate the Establishment Clause. <u>Id.</u> at 687. In that opinion, the Supreme Court opined on the long history and tradition of government sponsored and displayed religious symbols. For example, "[a]rt galleries supported by public revenues display religious paintings of the 15th and 16th centuries, predominantly inspired by one religious faith." <u>Id.</u> at 677–8. "The National Gallery in Washington, maintained with Government support, for example, has long exhibited masterpieces with religious messages, notably the Last Supper, and paintings depicting the Birth of Christ, the Crucifixion, and the Resurrection, among many others with explicit Christian themes and messages." <u>Id.</u> at 678. The Supreme Court noted, "The very chamber in which oral arguments on this

8

case were heard is decorated with a notable and permanent -- not seasonal -- symbol of religion: Moses with the Ten Commandments." Id. at 677. There are countless examples of "governmental sponsorship of graphic manifestations of [religious] heritage." Id.

From the Supreme Court's recounting, it is clear that government-sponsored and displayed religious symbols have long been part of this nation's history and practices, without violating the Establishment Clause. Therefore, the Court finds the allegation that a Bagua Mirror was displayed on City property insufficient to state a claim for violation of the Establishment Clause. In addition, the SAC's allegation that Plaintiff was offended at the sight of the Bagua Mirror does not amount to any degree of governmental coercion. Offense does not equate to coercion. Kennedy, 597 U.S. at 539 (quoting Town of Greece, N.Y. v. Galloway, 572 U. S. 565, 589 (2014) (plurality opinion).) The SAC's Establishment Clause Claim is dismissed.

### B. First Amendment Freedom of Speech (Claim 2)

Plaintiff's second claim asserts a violation of the First Amendment's freedom of speech protections by the Police Chief and Mayor. Specifically, the FAC alleges that these defendants caused the Westminster Police Department to arrest Plaintiff during the press conference in retaliation for Plaintiff's exercise of speech. (FAC ¶ 53.) Defendants argue this claim fails because Plaintiff was not engaged in a constitutionally protected activity at the time of his arrest. (Mot. at 17.) Specifically, the Motion contends the FAC allegations show there was probable cause to arrest Plaintiff for vandalism and vandalism is not a protected activity. (Id. at 18–19.) In opposition, Plaintiff argues that his activity was protected political and religious speech and that the arrest was solely designed to silence Plaintiff's protest. (Opp.at 23.)

1        The First Amendment prohibits government officials from subjecting an
2 individual to retaliatory actions, including arrest, for engaging in protected speech.
3 <u>Nieves v. Bartlett</u>, 587 U.S. 391, 398 (2019).  To state a First Amendment retaliation
4 claim, "the plaintiff must allege that (1) he engaged in constitutionally protected activity;
5 (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing
6 to engage in the protected activity; and (3) the protected activity was a substantial
7 motivating factor in the defendant's conduct". <u>Arizona Students' Ass'n v. Arizona Bd. of
8 Regents</u>, 824 F.3d 858, 867 (9th Cir. 2016).  The government official's retaliatory motive
9 must be a but-for cause of the Plaintiff's injury, meaning that the adverse action against
10 the plaintiff would not have been taken absent the retaliatory motive.  <u>Nieves</u>, 587 U.S.
11 at 398–99 (2019).  Specifically for a retaliatory arrest claim, the plaintiff "must plead the
12 absence of probable cause for the arrest." <u>Id.</u> at 402.

13        On the face of the SAC, probable cause appears for at least two possible crimes.
14 The SAC alleges that the Mayor requested that the Westminster Police arrest Plaintiff to
15 "discourage Plaintiff from speaking out against the Bagua Mirror.  (SAC ¶ 51.)  However,
16 the SAC also alleges that before his arrest, Plaintiff removed the Bagua Mirror from the
17 public area outside the office of the Mayor.  (<u>Id.</u> ¶ 23.)   Probable cause exists when
18 "under the totality of the circumstances known to the arresting officers, a prudent
19 person would have concluded that there was a fair probability that the defendant had
20 committed a crime." <u>United States v. Lopez</u>, 482 F.3d 1067, 1072 (9th Cir. 2007).  Under
21 California Penal Code section 594, a person is guilty of vandalism if he maliciously
22 defaces, damages, or destroys any real or personal property not his own.  Cal. Pen. Code
23 § 594.  Under California Penal Code section 484, a person is guilty of larceny if he steals,
24 takes, carries, leads or drives away the personal property of another. Cal. Pen. Code §

484. The SAC alleges that Plaintiff removed an object attached to a City wall "from the public area outside of the office of the Mayor", and then was arrested. (SAC ¶¶ 23, 24.) The SAC alleges the object was not Plaintiff's property and he took it. Upon those facts, a reasonably prudent person would conclude there was a fair probability Plaintiff committed larceny or vandalism in damaging the object or the wall. "That Defendant included some criticism of the government does not necessarily imbue his conduct with First Amendment protection." United States v. Waggy, 936 F.3d 1014, 1019 (9th Cir. 2019). Because the SAC does not plead the absence of probable cause for Plaintiff's arrest, this claim fails and is dismissed.

### C. Malicious Prosecution/Substantive Due Process (Claim 3)

The SAC's third claim is for malicious prosecution pursuant to the Fourteenth Amendment against all defendants. In support of this claim, the SAC alleges that the Mayor and Police Chief caused the arrest of Plaintiff during Plaintiff's press conference and that Plaintiff "was charged subsequent to his arrest with vandalism by the City Police Department on September 25, 2024." (SAC ¶¶ 68–71.) The Motion argues that Claim 3 fails for three reasons. First, Defendants contend Plaintiff was never criminally prosecuted. (Mot. at 19.) Second, according to Defendants, probable cause existed for Plaintiff's arrest. (Id. at 20.) Third, Defendants maintain the Mayor and Police Chief took no affirmative action to encourage prosecution of Plaintiff by a prosecutor. (Id.) Plaintiff's Opposition does not respond to Defendant's arguments regarding Claim 3.

First, while the SAC asserts a claim for malicious prosecution under the Fourteenth Amendment, the Court construes this claim as brought under the Fourth Amendment. The Court follows the Supreme Court plurality opinion in Albright, which recognized malicious prosecution claims under the Fourth Amendment's protection

against unreasonable seizure and explicitly not under the Fourteenth Amendment. Albright v. Oliver, 510 U.S. 266, 268 (1994).

To state a Section 1983 claim for violation of the Fourth Amendment due to malicious prosecution, a plaintiff must show the following elements: (1) the prosecution was without probable cause; (2) the purpose of the prosecution was to deny equal protection or another specific constitutional right; and (3) the prosecution ended without a conviction. Thompson v. Clark, 596 U.S. 36, 39 (2022); Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)).  As discussed in the previous section, probable cause for Plaintiff's arrest appears on the face of the SAC.  Therefore, the first element for a claim for malicious prosecution is not met.

In addition, Defendants argue that while Plaintiff was arrested, no prosecution against Plaintiff was commenced.  (Mot. at 19–20.)  In support of this assertion, Defendants cite judicially noticed documents which reflect that no criminal complaint was filed against Plaintiff in relation to his September 25, 2024 arrest. (See Dkt. No. 35 (Orange County Superior Court Case Search Results for Joseph Ngo showing no criminal complaint filed).)  Because Plaintiff was never prosecuted, he cannot meet the third element that the "prosecution ended without a conviction".  The SAC fails to state a claim for malicious prosecution and this claim is dismissed.

    **D.**    **Fourth Amendment Unlawful Seizure/Excessive Force (Claim 4)**

The SAC asserts a Fourth Amendment "unlawful seizure/excessive force" claim (the "Fourth Amendment Claim") against all Defendants.  The Motion argues that the claim for unlawful seizure fails because the SAC allegations show that probable cause existed for Plaintiff's arrest.  (Mot. at 21.)  Defendants do not address the excessive force

aspect of the claim.  In Opposition, Plaintiff contends that handcuffing and physically removing Plaintiff from his press conference against his will was an invalid arrest.  (Opp. at 25.)  The Opposition cites a federal criminal statute in support of Plaintiff's position.  (Opp. at 26 (citing 18 U.S.C. § 242.)  Lastly, Plaintiff contends the arrest was invalid because its only purpose was to silence Plaintiff's protected speech.  (Id.)

### 1. Unlawful Seizure

Plaintiff asserts an unlawful seizure claim against all Defendants.  The SAC alleges Plaintiff was taken into custody by the Westminster Police and was handcuffed.  (SAC ¶ 88.)  The general rule is that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime and unreasonable in the absence of probable cause.  Bailey v. United States, 568 U.S. 186, 192 (2013). As discussed above, the Complaint allegations show there was probable cause for Plaintiff's arrest.  (Supra Section IV.B.)  Therefore, as alleged, the seizure of Plaintiff was reasonable.  A Fourth Amendment claim premised on the unlawful seizure of Plaintiff fails and is dismissed.

### 2. Excessive Force

The SAC asserts an excessive force claim against all Defendants.  Plaintiff alleges he was taken into custody by the Westminster Police and was handcuffed.  (SAC ¶ 88.)  To determine whether an official used excessive force, courts balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Id. at 396.  Courts "also consider, under the totality of the circumstances, the quantum of force used to arrest the plaintiff, the availability of alternative methods of capturing or detaining the suspect, and the plaintiff's mental and emotional state."  Luchtel v. Hagemann, 623 F.3d 975, 980 (9th

Cir. 2010) (citations omitted).  Courts have held that a de minimis use of force is insufficient to support a claim of excessive force.  See Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.").

Here, the SAC alleges no use of force beyond placing Plaintiff in handcuffs.  Plaintiff alleges no injuries or quantum of forced used.  Given that the allegations show there was probable cause for Plaintiff's arrest, being restrained in handcuffs was not unreasonable.  The excessive force claim fails and is dismissed.

### E.    Conspiracy to Violate Civil Rights (Claim 5)

The SAC asserts a conspiracy to violate civil rights claim against all Defendants.  (SAC ¶¶ 97–110.)  The Motion argues that this claim fails for two reasons.  First, Defendants contend that the SAC does not sufficiently allege an underlying constitutional violation, so there can be no conspiracy claim.  (Mot. at 21.)  Second, according to Defendants, the SAC contains no facts alleging Defendants had an agreement to violate Plaintiff's rights.  (Id.)  In opposition, Plaintiff argues that the Mayor and Police Chief conspired ahead of the press conference to have police present there and thus the conspiracy claim should not be dismissed.  (Opp. at 27.)

To plead a claim for conspiracy to violate civil rights under Section 1983, a plaintiff must allege "an agreement or meeting of the minds to violate constitutional rights."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)).  A plaintiff must also allege an actual deprivation of a constitutional right.  Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "To be liable,

each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441. Conclusory allegations of conspiracy are not sufficient to support a claim under Section 1983. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980); see also Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) (plaintiff must allege specific facts to support claim of conspiracy to violate constitutional rights); Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004) ("[t]o state a claim for conspiracy to violate constitutional rights, the plaintiff must state specific facts to support the existence of the claimed conspiracy.") (internal citations omitted).

The Court agrees with Defendants. For all the reasons already addressed in this order, the SAC does not allege an underlying constitutional violation. In addition, the SAC fails to allege a meeting of the minds between the Mayor, the Police Chief and the City to violate Plaintiff's rights. The allegation that the Mayor and Police Chief "planned ahead" to have police present at the press conference is insufficient to show an agreement to violate Plaintiff's rights, because merely having police present at an event does not violate any rights. The FAC fails to state a claim for conspiracy to violate civil rights. This claim is dismissed.

### F. Assault and Battery (Claim 6)

For its sixth claim, the SAC asserts "assault and battery". (SAC ¶¶ 111–123.) The Motion argues that this claim fails because there are no allegations in the SAC that the Mayor or Policy Chief personally touched Plaintiff, or that any touching caused Plaintiff harm. However, the Opposition contends that this claim is valid because Plaintiff's arrest was false and retaliatory. (Opp. at 27–28.)

Assault is a state law claim. The elements of a cause of action for assault are:

> (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm.

So v. Shin, 212 Cal. App. 4th 652, 668–69 (2013), as modified on denial of reh'g (Jan. 28, 2013).

Battery is a state law claim. The elements of a cause of action for battery are:

> (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching.

Id. To state a claim for battery against a law enforcement officer, a plaintiff must also allege that the officer used unreasonable force, in addition to the above elements. Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1272 (1998) (Plaintiff must allege and prove unreasonable force as an element of the tort of battery against a police officer).

The SAC contains no factual allegations that the Mayor or Police Chief, themselves, committed assault or battery against Plaintiff. The SAC does not state a claim for battery on the basis that the Mayor or Police Chief caused Plaintiff to be touched in the manner of battery, because the SAC alleges Plaintiff was arrested by police officers. As the Court found above, the SAC does not allege facts to show that the arrest was executed with unreasonable force, so the elements are not met. (Supra Section IV.D.2.) The assault and battery claims are dismissed.

### G. False Imprisonment (Claim 7)

The SAC asserts a claim for false imprisonment. (SAC ¶¶ 125–137.) The Motion argues that this claims fails because it requires allegations showing a lack of probable cause. (Mot. at 21–22.) The Opposition contends that the SAC states a claim for false arrest because the arrest was a "sham" and "invalid". (Opp. at 16–17.)

False imprisonment is a state law tort. "The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485, 496 (2000). "In California a cause of action for false imprisonment will lie (1) where there has been an unlawful arrest followed by imprisonment, or (2) where the arrest is lawful but an unreasonable delay has occurred in taking the person before a magistrate, for so much of the imprisonment as occurred after the period of the reasonable or necessary delay." City of Newport Beach v. Sasse, 9 Cal. App. 3d 803, 810 (1970). An arrest is lawful where the officer had probable cause to believe a crime was committed in his presence. See Whaley v. Jansen, 208 Cal. App. 2d 222, 228 (1962) ("an authorized peace officer may make an arrest without a warrant for a crime which he has probable cause to believe is being committed in his presence, although it be a misdemeanor.")

Here, as with several of the SAC's other claims, the false imprisonment claim fails because the SAC's allegations show there was probable cause for the police to arrest Plaintiff. (Supra Section IV.B.) The SAC does not state a claim for false imprisonment and this claim is dismissed.

### H. Intentional Infliction of Emotional Distress (Claim 8)

The SAC's eighth claim is for intentional infliction of emotional distress ("IIED")

against all defendants. (SAC ¶¶ 138–47.) Defendants argue this claim fails because there are no allegations in the SAC which constitute extreme and outrageous conduct by any of the Defendants. (Mot. at 22–23.) In opposition, Plaintiff contends that the actions of the Mayor and Police Chief were egregious because the false arrest was designed to embarrass and impugn Plaintiff. (Opp. at 29–30.) Plaintiff argues the claim is valid because the Mayor subsequently discussed the arrest publicly and said Plaintiff was unfit for public office. (Id. at 29.)

To state a claim for intentional infliction of emotional distress a Plaintiff must allege the following elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Hughes v. Pair, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009). A defendant's conduct is "outrageous" when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. Id. The Court agrees with Defendants that the SAC contains no allegations of extreme and outrageous conduct by the Defendants. The SAC fails to state a claim for IIED. This claim is dismissed.

I.     **Municipal Liability**

The Motion argues that the Section 1983 claims brought against the City of Westminster must be dismissed. (Mot. at 23–24.) These include the first claim for violation of the Establishment Clause, the third claim for malicious prosecution, the fourth claim for unlawful seizure/excessive force and the fifth claim for conspiracy to violate civil rights. (Id.) Defendants maintain that the SAC is devoid of any allegations of a custom, policy or practice of the City or a decision from a final policymaker that

1  caused Plaintiff's alleged harm. (Id.) In opposition, Plaintiff argues that the Mayor and
2  Police chief hold positions of policy-making authority. (Opp. at 29.) In addition,
3  Plaintiff argues that allegations from the SAC regarding the city council voting to deny a
4  public hearing on the matter of removing the Bagua Mirror shows affirmative support of
5  the Bagua Mirror as a policy of the City of Westminster. (Id. at 31.)

6       To hold a municipal defendant, like the City of Westminster, liable under Section
7  1983, Plaintiff must show the following: (1) an underlying constitutional violation and
8  (2) a custom policy or practice of the municipal defendant that was the moving force
9  behind the constitutional violation. Monell v. Dep't of Soc. Servs. of City of New York,
10 436 U.S. 658, 691 (1978); Lockett v. Cty. of Los Angeles, 977 F.3d 737, 741 (9th Cir.
11 2020).

12      The Court agrees with the Defendants. There are no factual allegations in the
13 SAC of a custom, policy or practice of the City that caused Plaintiff's alleged harm. The
14 allegations regarding the city council declining to set a Bagua Mirror item for public
15 hearing does not show a final policymaker decision that caused Plaintiff's alleged harm.
16 The SAC does not allege sufficient facts to show that part of the city council represented
17 a final policymaker for the City. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127
18 (1988) (state law determines who is final policymaker for a municipality). Furthermore,
19 declining to put an item on a public hearing agenda bears no connection to Plaintiff's
20 arrest, nor does it demonstrate a City policy of displaying the Bagua Mirror, because
21 there are myriad reasons why a city council might decline to publicly hear a matter. The
22 SAC does not state any claim for municipal liability against the City.

23 **V.    LEAVE TO AMEND**

24      Leave to amend is inappropriate here. The Court has discretion to dismiss with

or without leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126–30 (9th Cir. 2000) (en banc).  In the Ninth Circuit, courts should grant leave to amend if it appears possible that the defects in the complaint could be corrected.  See id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."). However, if, after careful consideration, it is clear that amendment cannot cure a complaint, the Court may dismiss without leave to amend.  Cato, 70 F.3d at 1105 06 (affirming district court's dismissal of the complaint with prejudice pursuant to 28 U.S.C. § 1915(d)).

In this case, Plaintiff has had multiple opportunities to amend his complaint, including after the Court granted the Defendants' first motion to dismiss.  The fact that each iteration of the complaint has had the same or similar deficiencies shows that Plaintiff is unable to allege facts that state a claim.  Therefore, further leave to amend would be futile.

**VI.   CONCLUSION**

For the foregoing reasons, the Motion is granted without leave to amend.  The action is dismissed in its entirety.

IT IS SO ORDERED.

Dated:  November 26, 2025

          _____/s/ Autumn D. Spaeth_____
          THE HONORABLE AUTUMN D. SPAETH
          United States Magistrate Judge